IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ANTWUNE JENKINS | § | |
| v. | § | CIVIL ACTION NO. 6:23cv95 |
| CAPTAIN ARIEL BURKS, ET AL. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

The Plaintiff Antwune Jenkins, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The lawsuit was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. The named Defendants are Captain Ariel Burks, Sgt. Timothy Larsen, and Sgt. Daryl Eason. This Report concerns Plaintiff's claims against Sgt. Eason.

**I. Background**

Plaintiff states that on February 2, 2021, he was sitting on the floor in his cell because he had fallen a number of times while trying to use his walker. There was "some type of situation" which caused Captain Burks to come to X Wing, but Plaintiff could not see what happened very well because he was on the floor. He could tell Burks was there because he recognized her voice.

Plaintiff states that Sgt. Eason and other officers came to his cell and told him to get up, which he did. He grabbed hold of his walker and sat on it. An officer told him to strip out, and after he did, the officer gave him back his boxer shorts to put on. The officer then opened the door and handcuffed one of Plaintiff's hands to the walker. As Plaintiff went out the door, Captain Burks stopped him and told the officer to re-handcuff him. Plaintiff was then handcuffed behind his back and he sat down on the walker.

According to Plaintiff, the officers had difficulty walking him out the door because they were carrying his weight. He heard someone say that there was nothing wrong with him. When he got outside the cell, she [apparently meaning Captain Burks] told him to stand against the wall. He protested this order and sat down in a chair; Plaintiff states that "she knows I been complaining about my back and legs and being assigned the wrong [sic] because complained to her before."

The officers then went into his cell and started taking all of his property, including clothes, underwear, socks, sheets, towels, shoes, appliances, and the obituaries of his grandmother and his son. He began to get agitated because he did not know why the officers were doing this. Officers then picked him up and carried him over their heads back into the cell, where they sat him down on the floor and left while he was still handcuffed.

Plaintiff says that Sgt. Larsen told him to get up and walk over to the door and give up the handcuffs, even though Larsen knew Plaintiff was unable to do that. Plaintiff states that he has been telling the officers about his condition since he arrived back at the unit in December of 2020. He explains that he was placed on X Wing because his medical records show that a spine specialist said he should be in a wheelchair at all times but the Beto Unit infirmary refused to house him. He says that "Warden Weaver and Lt. McGee got involved and put me back in transit to be re-transferred from the Beto Unit because I was not [to] be there in the first place, I had just got shipped off."

After Sgt. Larsen told him a few times to get up and relinquish the handcuffs, Plaintiff states that he put his face in the corner where the floor meets the wall, so that the handcuffs were exposed. A team came into the cell and removed the handcuffs without incident.

Plaintiff states that he was "in a lot of pain and hurt" because of the taking of his son's obituary. He says that his son's funeral was televised because it was held at the Dallas Cowboys football stadium on January 6, 2021. He begged the officers not to take the obituary because it was all he had left of his son. Plaintiff states, without elaboration, that "this was retaliation."

Plaintiff asserts that the officers were "trying to provoke him to walk" by threatening to use force in him, in order to show that he can walk. He states that there was something terribly wrong

with his back because of the pain he was feeling, but "since I been there they always said it was nothing wrong with me and I was faking, and always harassing me, trying to make me do something I cannot do and always threatening to jump on me and I guess this time was their opportunity." He claims the officers said it was not documented in his medical file, but it was not documented because they don't escort him to his appointments. He had a 50 yard walking restriction, and for distances greater than 50 yards, he required a wheelchair by policy.

Plaintiff states that Sgt. Larsen ordered him to get up and threatened to use chemical agents. Plaintiff could not stand up, so he decided to get under the bunk. Sgt. Larsen sprayed Plaintiff with the chemical agents and he started choking and thought he was going to die. He started to panic and tried to grab his walker, but fell hard; he think this is what caused his spine to collapse. However, he says that "Sgt. Larsen did not show any sympathy," so Plaintiff pulled down his boxers and lay on the floor, coughing and gagging.

Afterwards, Plaintiff contends that he was left in the cell for six days with chemical agents all over the cell and over him. Captain Burks put a yellow sign outside his door saying not to let him out of the cell for any reason. The chemical agents burned his whole body and he had no towel and no soap. Even his C-Pap machine had chemicals all over it. He begged for help every day, but the officers ignored him because Captain Burks had signed off on it. All he could do was lay on his mat, and when food came, he had to eat with his hands.

On February 9, 2021, Plaintiff says that he "got a break" because he had an appointment with the ortho spine clinic. The prison officials had to give him a shower and clean clothes because they could not let him go to the hospital in the condition he was in. He saw the head of the ortho spine department, who told him that he had a life threatening condition, even though Captain Burks had told him seven days earlier that there was nothing wrong with him. The doctor said that Plaintiff had some bleeding and swelling, and if Plaintiff had an infection they would have to prep him for emergency surgery. Plaintiff was admitted to the hospital and an emergency MRI was done.

According to Plaintiff, this MRI showed that he had a severe bone on bone collapse in the L5-S1 portion of the spine, which he says was caused when he fell when he was sprayed. Plaintiff states "all of this because Daryl Eason was retaliating against me because [I] fell during his escort and he wanted to prove I was faking because he thought I was faking then."

Plaintiff says that his property was taken and he was told that it was "altered," meaning he would not get it back, but Warden Breeden gave it back in a property settlement. He then states that Governor Gregg Abbott intervened and got him expedited off the unit. When he got a disciplinary case over the incident, it was only a minor case. Plaintiff again says that Eason escalated the situation because "he had something he wanted to prove" and retaliated because he said there was nothing wrong with Plaintiff, but a week later the spine specialist said he had a life threatening condition.

Plaintiff states that he wrote a Step One grievance, which bears a notation that it was returned to him on March 25, 2021, but in fact he received it back on April 2. He wrote his Step Two grievance on April 4 and gave it to the officer on April 5, but he was told that his time had expired. He was told it had been received on April 15, but it is stamped "March 6" at the top, which Plaintiff says he thinks should be April 6. Plaintiff asserts that he was subjected to cruel and unusual punishment and that he suffered irreparable harm from deliberate indifference to his serious medical needs.

**II. Discussion**

<u>A. Screening Standards</u>

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees and identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

A complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts that, taken as true, state a claim that is plausible on its face and thus does not raise a right to relief above the speculative level. *Montoya v. FedEx Ground Packaging System Inc.*, 614 F.3d 145, 149 (5th Cir. 2010), *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim has factual plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). This plausibility standard is not akin to a probability requirement, but asks for more than a possibility that the defendant has acted unlawfully. *Twombly*, 550 U.S. at 556.

Detailed factual allegations are not required, but the claim must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677-78. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. *Id.* at 678.

A complaint may be dismissed if a plaintiff fails to "nudge [his] claims across the line from conceivable to plausible," if the complaint pleads facts merely consistent with or creating a suspicion of the defendant's liability, or if a complaint lacks a factual allegation regarding any required element necessary to obtain relief. *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 421 (5th Cir. 2006). *Pro se* plaintiffs are held to a more lenient standard than are lawyers when analyzing a complaint, but *pro se* plaintiffs must still plead factual allegations which raise the right to relief above the speculative level. *Chhim v. University of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Although all well-pleaded facts are taken as true, the district court need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. *Gentilello v. Rege*, 627

F.3d 540, 544 (5th Cir. 2010), *citing Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). Dismissal is proper if a complaint lacks a factual allegation regarding any required element necessary to obtain relief. *Rios*, 444 F.3d at 421.

### B. The Claims Against Sgt. Eason

The only specific mention of Sgt. Eason with regard to the February 2, 2021 incident is that Eason came to the cell with other officers. Plaintiff states that Sgt. Larsen sprayed him with chemical agents and Captain Burks ordered that he not be removed from the cell, but there are no other references to Sgt. Eason. Mere presence at the scene of a use of force does not give rise to liability, even bystander liability. *Coker v. Gore*, civil action no. 3:18cv444, 2022 U.S. Dist. LEXIS 136826, 2022 WL 3043407 (S.D.Tex., August 2, 2022); *Vasquez v. Chacon*, 390 F.App'x 305, 2010 U.S. App. LEXIS 15436, 2010 WL 3023273 (5th Cir., July 23, 2020). In the absence of any allegations of personal involvement with unconstitutional conduct, Plaintiff has failed to state a claim against Sgt. Eason in this regard.

Plaintiff also complains of being told that he was faking and says "all of this because Daryl Eason was retaliating against me because [I] fell during his escort and he wanted to prove I was faking because he thought I was faking then." After saying the disciplinary case he received was minor, Plaintiff asserts that "Eason escalated the situation because he had something he wanted to prove and retaliated, in his mind there is nothing wrong with me, but seven days later the spine specialist [said] I had a life threatening condition, a pre-existing condition, but during the use of force my condition became worse when I fell. Mostly everything I stated is on the use of force DVD."

The Fifth Circuit has held that to state a valid claim for retaliation under §1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *Hines v. Marshall*, slip op. no. 20-40444, 2021 U.S. App. LEXIS 29623 at *2 (5th Cir. 2021), *citing Jones*

*v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999); *see also Petzold v. Rostollan*, 946 F.3d 242, 252 (5th Cir. 2019).

This requirement places a heavy burden upon inmates, because mere conclusionary allegations will not suffice; instead, the inmate must produce direct evidence of retaliation or, the more probable scenario, a chronology of events from which retaliation may plausibly be inferred. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). The relevant showing must be more than the prisoner's personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997), *citing Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995).

The Fifth Circuit has emphasized that the alleged adverse acts must be done in retaliation for the exercise of a constitutional right. *Johnson*, 110 F.3d at 310-11; *Tighe v. Wall*, 100 F.3d 41, 43 (5th Cir. 1996). In addition, the court has cautioned that "the prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Woods v. Smith*, 60 F.3d at 1166. The court went on to explain that district courts must "carefully scrutinize" claims of retaliation in order to ensure that prisoners do not "inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around themselves." *Id*.

Plaintiff attaches as an exhibit (docket no. 1-9, p. 1) a statement from Eason with regard to a grievance he filed, saying that it shows retaliation. In this statement, which is dated June 22, 2020, Eason said that Plaintiff was provided with a Covid-related phone call. Before the call, Plaintiff was told how long the call could be and that he would receive warnings at 30 second and 10 seconds before the call was terminated. He did receive the time warnings and an order to end the call, but continued the conversation anyway. Upon the third order to end the conversation, Eason terminated the call. On a subsequent day (not specified), Eason stated that Plaintiff claimed he fell because Eason had cuffed him to a walker. In fact, Plaintiff had been front-cuffed, and Eason instructed him to allow Eason to help him out of the cell, since medical walkers will not fit through the cell door

without being turned sideways. When Eason opened the door, Plaintiff threw himself forward, landing on the floor in front of his cell. Eason put out a call on the radio and when medical arrived, Plaintiff said that he was "okay" and declined medical treatment. Eason stated that he did not believe Plaintiff fell by accident or due to his medical condition, but instead chose to lunge forward to stage an injury in retaliation for the incident involving the phone.

This statement plainly refers to an incident which occurred well before the incidents forming the basis of the present lawsuit. Plaintiff has offered nothing beyond his own belief that he was the victim of retaliation to show that the filing of a grievance in May of 2020 was connected to an incident which occurred in February of 2021. The Fifth Circuit has explained that the mere fact that one incident precedes another is not proof of a causal connection because this is the logical fallacy of *post hoc ergo propter hoc* (after this, therefore because of this). *Huss v. Gayden*, 571 F.3d 442, 459 (5th Cir. 2009) (noting that "the *post hoc ergo propter hoc* fallacy assumes causality from temporal sequence," which is a "false inference"); *Tampa Times Co. v. National Labor Relations Board*, 193 F.2d 582, 583 (5th Cir. 1952) (*post hoc ergo propter hoc* is not sound logic). The Fifth Circuit has specifically stated that "temporal proximity is insufficient to prove 'but for' causation." *Strong v. University Healthcare Systems, L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).

Plaintiff's conclusory allegations that he was the victim of retaliation does not present a chronology from which retaliation may plausibly be inferred. Instead, it is little more than Plaintiff's personal belief that he was the victim of retaliation. Furthermore, Plaintiff has not identified any constitutionally protected conduct for which he claims the retaliation took place. *See generally James v. Gage*, civil action no. 15-cv-106, 2018 U.S. Dist. LEXIS 94388, 2018 WL 2694436 (S.D.N.Y., June 4, 2018) ( claim that prisoner suffered retaliation from medical director because the director believed the prisoner was faking did not set out a claim because no constitutional right was implicated). Plaintiff has failed to state a claim of retaliation upon which relief may be granted against Sgt. Eason. *Byrd v. Harrell*, 48 F.4th 343, 348 (5th Cir. 2022); *see also Ibenyenwa v. Wells*, slip op. no. 21-40241, 2022 U.S. App. LEXIS 3663 at *3 (5th Cir. 2022).

Plaintiff's vague and conclusory assertion that Sgt. Eason "escalated the situation" is simply an "unadorned, the-defendant-unlawfully-harmed-me accusation" which amounts to nothing more than a naked assertion devoid of further factual enhancement. As such, it also does not state a claim upon which relief may be granted. *Iqbal*, 556 U.S. at 677-78.

## RECOMMENDATION

It is accordingly recommended that the Plaintiff's claims against the Defendant Sgt. Daryl Eason be dismissed without prejudice for failure to state a claim upon which relief may be granted. It is further recommended that Sgt. Eason be dismissed as a party to the lawsuit. The dismissal of these claims should have no effect upon the Plaintiff's claims against Captain Burks and Sgt. Larsen, which remain active in the lawsuit at this time.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error. *Duarte v. City of Lewisville*, 858 F.3d 348, 352 (5th Cir. 2017).

So ORDERED and SIGNED this 24th day of April, 2023.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE